**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

JOSEPHINE LANDOLFI,
    *Plaintiff*,

    v.                                 No. 3:22-cv-770 (VAB)

TOWN OF NORTH HAVEN,
    *Defendant.*

**RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

Josephine Landolfi ("Plaintiff") has sued her former employer, the Town of North Haven ("Defendant" or the "Town") for alleged violations of Family Medical Leave Act ("FMLA"). Ms. Landolfi brings two causes of action: interference in violation of the FMLA (Count One) and retaliation in violation of the FMLA (Count Two).

For the following reasons, the Town's motion for summary judgment is **GRANTED in part and DENIED in part.**

As to Ms. Landolfi's FMLA interference claim, any such claim arising out of her 2018 FMLA leave will be dismissed; her FMLA interference clam arising out of her 2019 FMLA leave will remain.

As to Ms. Landolfi's FMLA retaliation claim, any such claim arising out of her 2018 FMLA leave will be dismissed; her FMLA retaliation clam arising out of her 2019 FMLA leave will remain.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

    A. **Factual Background**

Hired by the Town of North Haven in a part-time capacity for the accounts payable

department in 1998, Local Rule 56(a)(2) Statement at 3, ECF No. 39-2 (May 24, 2024) ("Pl.

SMF"); Def.'s Local Rule 56(a)(1) Statement ¶ 10, ECF No. 34-12 (Feb. 16, 2024) ("Def.

SMF"), Ms. Landolfi began working full-time in the accounts payable department in 2000. Pl.

SMF at 4;[1] Def. SMF ¶¶ 12, 13. In February 2018, Ms. Landolfi began working as a human

resources administrator. Pl. SMF at 7; Def. SMF ¶ 33.

    On April 27, 2018, Ms. Landolfi fell while at work and injured her left ankle. Pl. SMF at

7; Def. SMF ¶ 38. Ms. Landolfi received workers' compensation benefits, returned to work after

a week, and then fell again, this time injuring her right foot. Pl. SMF at 11; Def. SMF ¶ 38. Ms.

Landolfi went on FMLA leave on or about June 4, 2018, through approximately the end of

August in 2018 (the "first FMLA leave" or the "2018 FMLA leave"). Pl. SMF at 7; Def. SMF ¶

43. While on her first FMLA leave, Ms. Landolfi continued to complete various work tasks. Pl.

SMF at 9–11, 17–18; Def. SMF ¶¶ 44–56.

    In May 2019, Ms. Landolfi slipped and fell injuring her right knee while at home Pl.

SMF at 11; Def. SMF ¶ 57. On or about July 5, 2019, she commenced FMLA leave through

approximately September 10, 2019, when she returned to work (the "second FMLA leave" or the

"2019 FMLA leave"). Pl. SMF at 11; Def. SMF ¶ 58. While on her second FMLA leave, Ms.

Landolfi again continued to complete various work tasks. Pl. SMF at 19.

    In June 2020, during the pandemic prompted by the spread of the coronavirus

("COVID"), Ms. Landolfi's supervisor, Edward Swinkoski, eliminated Ms. Landolfi's human

---

[1] The Court will cite to the Pl. SMF using its page numbers, as the numbers for the paragraphs are repeated.

resources position, a decision approved by the First Selectman, Mike Freda. Pl. SMF at 13; Def. SMF ¶ 66.

### B. Procedural History

On June 10, 2022, Ms. Landolfi filed her Complaint. *See* Compl., ECF No. 1.

On November 15, 2022, Defendant filed a motion to dismiss. *See* Mot. to Dismiss, ECF No. 17.

On October 19, 2023, Defendant filed an Amended Answer. *See* Am. Answer, ECF No. 28.

On February 16, 2024, Defendant filed a motion for summary judgment. *See* Def.'s Mot. for Summ. J., ECF No. 34 ("Mot."); Mem. of L. in Supp. of Def.'s Mot. for Summ. J., ECF No. 34-1 ("Mem.").

On May 24, 2024, Ms. Landolfi filed and objection to Defendant's motion for summary judgment. *See* Pl.'s Obj. to Def.'s Mot. for Summ. J., ECF No. 39; Pl.'s Mem. of L. in Supp. of Obj. to Def.'s Mot. for Summ. J., ECF No. 39-1 ("Obj.").

## II.   STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in the original).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

When deciding a motion for summary judgment, a court may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any

other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed.

R. Civ. P. 56(c); *Pelletier v. Armstrong*, No. 3:99-cv-1559 (HBF), 2007 WL 685181, at *7 (D.

Conn. Mar. 2, 2007). In reviewing the record, a court must "construe the evidence in the light

most favorable to the non-moving party and to draw all reasonable inferences in [his] favor."

*Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013)

(citation omitted). If there is any evidence in the record from which a reasonable factual

inference could be drawn in favor of the non-moving party for the issue on which summary

judgment is sought, then summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old

Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

## III.   DISCUSSION

The FMLA "entitle[s] employees to take reasonable leave for medical reasons, for the

birth or adoption of a child, and for the care of child, spouse, or parent who has a serious health

condition." 29 U.S.C. § 2601(b)(2). "The FMLA's central provision guarantees eligible

employees 12 weeks of leave in a 1-year period following certain events: a disabling health

problem; a family member's serious illness; or the arrival of a new son or daughter." *Ragsdale v.

Wolverine World Wide, Inc*., 535 U.S. 81, 86 (2002) (citing 29 U.S.C. § 2612(a)(1)); *see also

Woods v. START Treatment & Recovery Ctrs., Inc*., 864 F.3d 158, 165–66 (2d Cir. 2017) ("The

Family and Medical Leave Act provides broad protections to employees who need to take time

away from work to deal with serious health conditions of the employee or [her] family.")

(citation omitted). An eligible employee is one who has been employed with the same employer

for at least twelve months and has accrued at least 1,250 hours of service with that employer. 29 U.S.C. § 2611(2)(a).

The FMLA further entitles the employee who takes leave "to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(B). And it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the law. 29 U.S.C. § 2615(a)(1). The law "creates a private right of action to seek both equitable relief and money damages against any employer (including a public agency) in any Federal or State court of competent jurisdiction should that employer interfere with, restrain, or deny the exercise of FMLA rights." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 174 (2d Cir. 2006) (internal citation and quotation marks omitted).

There are two types of FMLA claims: FMLA interference claims and FMLA retaliation claims. They "serve as ex ante and ex post" remedies for employees who seek to assert their rights under the FMLA. *Woods*, 864 F.3d at 166. Interference claims involve when an employer "has prevented or otherwise impeded the employee's ability to exercise rights under the FMLA." *Id*. Retaliation claims are raised when an employee exercises her rights or opposes perceived FMLA violations and is then subjected to an adverse employment action. *Id.* (citing *Potenza v. City of New York*, 365 F.3d 165, 167 (2d Cir. 2004)).

Ms. Landolfi has brought claims under the FMLA for both interference and retaliation, allegedly arriving out of FMLA leaves taken in 2018 and 2019. Defendant argues that (1) Ms. Landolfi's FMLA claims are time-barred; (2) she cannot establish a *prima facie* case under either a legal theory of FMLA interference or retaliation; and (3) the Town had legitimate,

nonretaliatory reasons for its actions that Ms. Landolfi cannot prove were pretextual. Mot. at 1.

The Court addresses each of these arguments as to her two basic claims in turn.

### A.  The FMLA Interference Claims

"The FMLA provides that '[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise' an eligible employee's rights under the FMLA." *DeAngelo v. Yellowbook Inc.*, 105 F. Supp. 3d 166, 182 (D. Conn. 2015) (quoting 29 U.S.C. § 2615(a)(1)). "Substantive rights under the FMLA subject to interference claims include the right to take leave, receive benefits during leave and be restored to the same or equivalent position following leave." *Id.* (quoting *Gauthier v. Yardney Technical Prods.*, Inc., No. 3:05-CV-1362(VLB), 2007 WL 2688854, at *4 (D. Conn. Sept. 13, 2007)).

An interference claim arises when an employer interferes *ex ante* with an employee's exercise of her FMLA rights. To prevail on an FMLA interference claim, a plaintiff must establish: "1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016); *Blake v. Recovery Network of Programs, Inc.*, 655 F. Supp. 3d 39, 48 (D. Conn. 2023).

As to Ms. Landolfi's FMLA interference claim, the Town of North Haven raises two arguments: (1) that any such claim is time-barred; and (2) that, on this record, there is no evidence that the Town denied Ms. Landolfi benefits to which she was entitled, the fifth essential element of a FMLA interference claim.

The Court will address each argument in turn.

*1. The Issue of Whether the FMLA Interference Claim is Timely*

The FMLA has a general statute of limitations of two (2) years "after the date of the last event constituting the alleged violation[.]" 29 U.S.C. § 2617(c)(1). If the action is for a "willful violation[,]" however, "such action may be brought within 3 years of the date of the last event constituting the alleged violation[.]" 29 U.S.C. § 2617(c)(2). "[A]n employer acts willfully when he or she 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [statute]." *Mejia v. Roma Cleaning, Inc*., 751 F. App'x 134, 136 (2d Cir. 2018) (quoting *Porter v. N.Y. Univ. School of Law*, 392 F.3d 530, 531 (2d Cir. 2004) (*per curiam*)).

"[I]f an employer acts reasonably in determining its legal obligation, its action cannot be deemed willful. . . . If an employer acts unreasonably, but not recklessly, in determining its legal obligation, then . . . it should not be . . . considered [willful]." *Porter*, 392 F.3d at 531–32 (quoting *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133 (1988)); *see also Prout v. Vladeck*, 316 F. Supp. 3d 784, 802 (S.D.N.Y. 2018) ("Neither an employer's 'good-faith but incorrect assumption' regarding its [statutory] obligations, nor an employer's lack of a reasonable basis for believing that it was complying with the [the statute], is by itself sufficient to demonstrate an employer's willfulness." (quoting *Saunders v. City of New York*, 594 F.Supp.2d 346, 358 (S.D.N.Y. 2008))).)  "Willful conduct is 'not merely negligent.'" *Mejia*, 751 F. App'x at 136 (quoting *McLaughlin*, 486 U.S. at 133)).

The Town of North Haven argues that the relevant statute of limitations period is two years, and Ms. Landolfi failed to file her Complaint until 2022, more than three years after her 2018 FMLA leave and more than two years after her 2019 FMLA leave. Mem. at 12–13.

In response, Ms. Landolfi argues that her 2018 leave falls within the statute of limitations because the continuing violation doctrine is appropriately applicable here as "the Defendant

committed the exact same violation in back-to-back years[.]," *id.* at 15, and her 2019 leave falls within the FMLA's three-year statute of limitations for willful violations, as opposed to the general two-year statute of limitations. Obj. at 13–15.

The Court disagrees, in part.

As to the first FMLA 2018 leave claim for the period from June 4, 2018, to August 2018, having filed her Complaint on June 10, 2022, Ms. Landolfi's claims are outside both the two-year or three-year statute of limitations period. *See Porter*, 392 F.3d at 531-32 ("since there is no dispute that Porter brought this claim more than two years after the last alleged wrongful act, his FMLA claim is time-barred."). And the continuing violation doctrine, which is inapplicable, does not provide a basis to save her otherwise untimely FMLA claims. *See*, *e.g.*, *Basso v. Willow Run Foods, Inc.*, 577 F. Supp. 3d 73, 81 (N.D.N.Y. 2022) ("The continuing violations doctrine, which allows plaintiffs to recover for time-barred conduct in certain circumstances, does not apply to FMLA claims."); *De Figueroa v. New York*, 403 F. Supp. 3d 133, 155 (E.D.N.Y. 2019) ("The continuing violations doctrine does not apply to FMLA claims, so the Court will not consider any allegations before this date."); *Smith v. Westchester Cnty.*, 769 F. Supp. 2d 448, 464 (S.D.N.Y. 2011) ("Plaintiff has not pointed to any case law applying the continuing violation doctrine to the FMLA. In fact, the weight of authority leans decidedly against Plaintiff." (citing cases in which courts found that the the continuing violation doctrine does not apply to FMLA claims)).

As to the second FMLA 2019 leave claim for the period from July 5, 2019, to September 10, 2019, these claims would fall within the three-year statute of limitations if the alleged violations were deemed willful. *See*, *e.g.*, *Santiago-Marra v. CSC Holdings, Inc.*, No. 3:09-CV-798 RNC, 2011 WL 3930290, at *5 (D. Conn. May 11, 2011) (not applying a three-year statute

of limitations period when "there is no evidence of a willful violation of the FMLA."); *see also Offor v. Mercy Med. Ctr.*, 676 F. App'x 51, 54 (2d Cir. 2017) ("Neither the complaint nor her briefing explain why any alleged violation of the FMLA would have been 'willful.' Offor's FMLA claim therefore does not plausibly allege a willful violation, is subject to a two-year statute of limitations[.]"); *Yetman v. Cap. Dist. Transportation Auth.*, 669 F. App'x 594, 595 (2d Cir. 2016) ("she has at worst alleged negligence in FMLA classification, but not willful violation"); *Kemp v. Regeneron Pharms.*, No. 20-CV-2270 (NSR), 2023 WL 159786, at *7 (S.D.N.Y. Jan. 11, 2023) ("Plaintiff has not shown that Defendant's conduct represented a willful violation of the FMLA. . . . The proper statute of limitations for Plaintiff's FMLA claim, then, is two years, as opposed to the three years permitted for a willful FMLA violation. Thus, Plaintiff's FMLA claim is time-barred."); *Reddick v. Yale Univ.*, No. 3:13-CV-1140 (WWE), 2015 WL 7428525, at *9 (D. Conn. Nov. 20, 2015) ("plaintiff has not alleged and has not adduced evidence indicating that defendant Yale acted recklessly").

As to whether there is a sufficient basis on this record to sustain Ms. Landolfi's 2019 FMLA claims for willfulness, because a reasonable factfinder could conclude that the Town of North Haven's alleged violations were willful, the Court will not grant summary judgment on statute of limitations grounds, as to Ms. Landolfi's 2019 FMLA leave claim. *See*, *e.g.*, *Gibson v. New York State Off. of Mental Health*, No. 617-CV-0608 (GTS/TWD), 2019 WL 6310978, at *5 (N.D.N.Y. Nov. 25, 2019) ("Given these genuine questions of fact, the Court cannot say at this stage which statute of limitations applies to Plaintiff's FMLA claim."); *Amley v. Sumitomo Mitsui Banking Corp.*, No. 19-CIV-3777 (CM/BCM), 2021 WL 4429784, at *7 (S.D.N.Y. Sept. 27, 2021) ("Willfulness, of course, is an issue that is rarely amenable to summary judgment."); *Prout v. Vladeck*, 316 F. Supp. 3d 784, 802 (S.D.N.Y. 2018) ("the standard for willfulness is a high

one, and that it involves inquiries into subjective states of mind that are inherently more difficult to prove than the objective facts that establish negligence").

Here, with respect to the willfulness of her FMLA interference claim, Ms. Landolfi had "work while on FMLA [leave] *twice*, in back-to-back years," Obj. at 14 (emphasis in original), a sufficient basis for the jury to determine that such a decision was in reckless disregard of her FMLA rights. While the Town of North Haven argues that, "[a]t worst, Swinkowski might have acted negligently by requesting that the Plaintiff assist with her job functions while out on leave . . . .," Mem. at 14, those credibility determinations and the ultimate determination of whether this constitutes willfulness should be determined by a jury, not this Court. *Cf. Kinkead v. Humana at Home, Inc*., 450 F. Supp. 3d 162, 189–90 (D. Conn. 2020) ("proof of willfulness . . . is generally a question for the jury . . . . Here, plaintiffs have raised genuine issues of fact about whether defendants' alleged noncompliance with the [statute] was willful." (citing *Kuebel v. Black & Decker Inc*., 643 F.3d 352, 366 (2d Cir. 2011)); *see also Kaytor v. Elec. Boat Corp*., 609 F.3d 537, 545 (2d Cir. 2010) ("In reviewing the evidence and the inferences that may reasonably be drawn, the court 'may not make credibility determinations or weigh the evidence . . . . 'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" (quoting *Reeves v. Sanderson Plumbing Prod*., Inc., 530 U.S. 133, 150 (2000)) (emphasis omitted)). Because a reasonable factfinder could conclude that the Town's alleged violations were willful, the Court will not grant summary judgment on statute of limitations grounds, as to Ms. Landolfi's 2019 FMLA leave claim.

Accordingly, while Ms. Landolfi's FMLA interference claims based on her 2018 leave will be dismissed as time-barred, and her 2019 FMLA leave claims will not be.

2. *The Issue of Whether the FMLA Interference Claim Can be Sustained Without a Denial of Benefits*

The FMLA "makes it unlawful for the employer to impede an employee's actual or attempted 'exercise' of a right provided under [the statute]." *Dighello v. Thurston Foods, Inc.*, 307 F. Supp. 3d 5, 23 (D. Conn. 2018) (quoting *Sarno v. Douglas Elliman–Gibbons & Ives, Inc.*, 183 F.3d 155, 162 (2d Cir. 1999)). If the employer did not actually deny the employee FMLA leave, then the "Plaintiff must show that Defendant interfered with her FMLA rights in some manner other than by denying her leave." *Peterson v. Town of Waterford*, No. 3:21-CV-332 (SVN), 2023 WL 2742343, at *13 (D. Conn. Mar. 31, 2023).

The Town of North Haven argues that Ms. Landolfi cannot establish her FMLA interference because the Town did not deny her any benefits she was entitled to receive. Mem. at 15.

Ms. Landolfi argues that she was required to perform work at home and at the office, while on FMLA leave and that this constitutes a denial of leave.

The Court agrees.

Here, while Ms. Landolfi was not impeded from taking her 2019 FMLA leave *ex ante*, *see* Pl. SMF at 11; Def. SMF ¶ 58, the actual amount of work she had to perform, while on leave, and whether that amount of work interfered with her FMLA leave is disputed. *See* Pl. SMF at 19 ("While Plaintiff was out on FMLA leave, Swinkoski again forced Plaintiff to work on fiscal year-end closing reports and other accounts payable items."); *id.* ("Plaintiff testified, 'Again, [Swinkoski] told me that I had to work and help him close the year-end, once again.'" (citations omitted)); *id.* ("Plaintiff further testified, 'I do know that I spoke to [Swinkoski] on the phone because his tone of voice scared me. And so I knew I had to do the work because I didn't know

what the consequences would be.'" (citations omitted)); *id.* ("On one occasion, Swinkoski sent another employee, Maria Perez, to Plaintiff's home to work with Plaintiff on Defendant's accounts payable"); *id*. at 19–20 ("I had to assist accounts payable. Maria Perez came to my home several days. And she and I had to work while Ed either texted or called us or emailed us on how it was going and what we were working on and that it had to get done because he needed the reports for year-end.").

As a result, the Court will leave for the jury the resolution of these factual issues, as well as the credibility determinations, involved with their resolution. *See Crosby v. Stew Leonard's Yonkers LLC*, 695 F. Supp. 3d 551, 576 (S.D.N.Y. 2023) (". . . Plaintiff is correct that, in some circumstances, a plaintiff can allege an interference claim by 'forcing [a plaintiff] to work from home during' the FMLA leave period . . . ." (citation omitted)); *Supino v. SUNY Downstate Med. Ctr.*, No. 19-CV-1315 (ENV/VMS), 2021 WL 4205181, at *12 (E.D.N.Y. Mar. 15, 2021) ("Dr. Supino has sufficiently alleged a plausible claim of FMLA interference. She was asked to overturn an IRB vote over the phone while on intermittent leave despite informing [Defendant] beforehand that she did not feel well enough to take on such a task."); *Zahler v. Empire Merchants*, LLC, No. 11-CV-3163 JG CLP, 2012 WL 273698, at *8–9 (E.D.N.Y. Jan. 31, 2012) ("Cronin 'repeatedly' demanded that Zahler use her computer to produce work product and send the work product to him. And he persisted in this demand in spite of her explanation that she could not perform the task because she was at that very moment carrying out the primary purpose of her FMLA leave—caring for her debilitated father at the hospital." (citations omitted)); *see also Kaytor*, 609 F.3d at 545 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." (citation and internal quotation marks omitted)).

Accordingly, apart from the timeliness issue with respect to Ms. Landolfi's FMLA leave in 2018, summary judgment will be denied as to Ms. Landolfi's FMLA interference claim.

### B.  The FMLA Retaliation Claims FMLA Prima Facie Case

Courts in the Second Circuit "analyze the retaliation claims brought pursuant to the FMLA under the burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Graziadio*, 817 F.3d at 429. "To establish a prima facia case of FMLA retaliation, a plaintiff must establish that (1) 'he exercised rights protected under the FMLA,' (2) 'he was qualified for his position,' (3) 'he suffered an adverse employment action,' and (4) 'the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 147 (2d Cir. 2012) (quoting *Potenza*, 365 F.3d at 168).

"If the plaintiff makes out a prima facie case, the defendant must demonstrate a legitimate, non-discriminatory reason for its actions; if the defendant does so, the plaintiff must then show that defendant's proffered explanation is pretextual." *Graziadio*, 817 F.3d at 429 (citing *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir.1996)); *see also Carter v. TD Bank, N.A.*, No. 23-950, 2024 WL 2828470, at *4 (2d Cir. June 4, 2024) ("FMLA retaliation claims are also subject to the *McDonnell Douglas* burden shifting framework. At step one, a plaintiff must establish that: (1) he exercised rights protected under the FMLA; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. If the plaintiff makes such a prima facie case, then the burden shifts to the employer to demonstrate a legitimate, non-discriminatory reason for its actions. The burden then shifts back

to the plaintiff to show that [the employer]'s proffered explanation is pretextual." (internal citations and quotations marks omitted)).

The evidence required to demonstrate a *prima facie* case "has been characterized as '*de minimis.*'" *Wanamaker v. Town of Westport Bd. of Educ.*, 11 F. Supp. 3d 51, 72 (D. Conn. 2014) (quoting *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010)). And if the plaintiff has demonstrated a *prima facie* case, the defendant must demonstrate "a legitimate, non-discriminatory reason for its actions." *Graziadio*, 817 F.3d at 429. If the defendant meets this burden, "the plaintiff must then show that defendant's proffered explanation is pretextual." *Id.*

The Town of North Haven argues that Ms. Landolfi's FMLA retaliation claims should be dismissed for three reasons: (1) for lack of timeliness; and (2) the failure to state a *prima facie case*; and (3) even if she has stated a *prima facie* case, the absence of any evidence of pretext, in light of the Town's legitimate, non-discriminatory reason for her termination.

For the same reasons discussed above, any FMLA retaliation claim based on the leave taken in 2018 is not timely, and any express claim on that basis also should be dismissed from the case. *See supra.* As to any FMLA retaliation claim based on leave taken in 2019, its viability again rests on the issue of willfulness, and on this record, as further discussed below, there are genuine issues of fact with respect to willfulness, requiring resolution by a jury, rather than by this Court. *See Offor*, 676 F. App'x at 55 ("retaliating against an employee for exercising FMLA rights is almost by definition a 'willful' violation").

The latter two issues about the viability of Ms. Landolfi's FMLA retaliation claim will be discussed in turn.

### 1. *The Issue of a Prima Facie Case for a FMLA Retaliation Claim*

The parties dispute centers on the fourth factor—whether retaliation can be inferred.

The Town of North Haven argues that Ms. Landolfi cannot establish a prima facie case of FMLA retaliation because "she cannot show that her job elimination occurred under circumstances giving rise to an inference of retaliatory intent" or that "her use of FMLA leave played any role in her job elimination." Mem. at 18.

Ms. Landolfi argues that following her FMLA leave in 2019, "Defendant's treatment of Plaintiff changed significantly, and she was subject to hostility by Swinkoski and her co-workers, was excluded from the operations of her department, and had her job duties reduced." Obj. at 18. She also argues that "Plaintiff engaged in further protected activity when, on June 12, 2020, she complained that she was being discriminated against since her return from leave. Plaintiff was terminated within days of this complaint. The close temporal proximity between this complaint and Plaintiff's termination is enough to satisfy the minimal burden of setting forth a *prima facie* case." *Id.* (citations omitted).

The Court agrees.

At this first step, Ms. Landolfi need only establish a *prima facie* case; and whether she can show the Town's proffered reason was pretextual is the next step, which the Court will address next. As to retaliatory intent, the fourth element necessary for establishing a *prima facie* case, it is established "when there is a basis for a jury to conclude that 'a causal connection [exists] between the plaintiff's protected activity and the adverse action taken by the employer.'" *Donnelly*, 691 F.3d at 152 (alteration in original) (quoting *Mack v. Otis Elevator Co.*, 326 F.3d 116, 129 (2d Cir. 2003)); *see also Hicks*, 593 F.3d at 164. An inference of retaliation can be established: "(i) indirectly through a showing that the protected activity was followed closely by discriminatory treatment, commonly known as 'temporal proximity;' (ii) indirectly through other evidence such as disparate treatment of similarly-situated employees; or (iii) directly through a

showing of evidence of retaliatory animus toward plaintiff by defendant." *Alexander v. Bd. of Educ. of City Sch. Dist. of N.Y.C.*, 107 F. Supp. 3d 323, 328–29 (S.D.N.Y. 2015) (citing *Carr v. WestLB Admin., Inc.*, 171 F. Supp. 2d 302, 309 (S.D.N.Y. 2001)), *aff'd sub nom. Alexander v. Bd. of Educ. of N.Y.C.*, 648 F. App'x 118 (2d Cir. 2016).

 "A close temporal relationship between the exercise of a protected right and an adverse employment action can, in some cases, sustain the conclusion that the action was a retaliation for the exercise of the right." *Kim v. Goldberg, Weprin, Finkel Goldstein, LLP*, 862 F. Supp. 2d 311, 319 (S.D.N.Y. 2012). While there is no bright line as to when a temporal relationship is too attenuated, to establish a causal relationship without "other direct or indirect evidence" of causation, courts regularly find that "two to three months between the protected activity and the adverse employment action" is typically the outer limit. *Id.* (internal citations omitted); *compare O'Reilly v. Consol. Edison Co. of N.Y., Inc.*, 173 F. App'x 20, 22 (2d Cir. 2006) ("While close temporal proximity can give rise to an inference of retaliation, the three month gap between [plaintiff]'s FMLA leave and her termination is not sufficient to give rise to an inference of retaliation in light of the additional leave time [the defendant]'s policy allowed." (citation omitted)), *and Clark v. Stop & Shop Supermarket Co.*, No. 3:15-CV-304 (JCH), 2016 WL 4408983, at *10 (D. Conn. Aug. 16, 2016) (finding that the plaintiff failed to show an inference of retaliation where he was terminated five months after his return from FMLA leave), *with Monclova v. City of New York, No.* 12-CV-3187 (KAM) (RML), 2014 WL 4828813, at *17 (E.D.N.Y. Sept. 29, 2014) (finding that three months is a "generally accepted" time-period "for raising an inference of retaliation based on temporal proximity"), *and Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005) (finding that, generally, "[t]hree months is on

the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation").

Here, although there is a significant gap in time—nine months—between Ms. Landolfi's 2019 FMLA leave and her 2020 termination, there is enough other evidence in the record to preclude summary judgment as to her *prima facie* case. For example, there is the alleged hostility and exclusion from department operations, allegedly in retaliation for her having taken FMLA, *see* Pl. SMF at 20–22, and the elimination of her job for alleged financial reasons, as well as Ms. Landolfi's alleged inability to develop and adequately perform the position in a satisfactory manner, *see* Def. SMF ¶¶ 60–66. As a result, on this record, there are genuine issues of material fact sufficient to preclude summary judgment. *See Nzugang v. Hutchinson Precision Sealing Sys., Inc.*, No. 3:21-CV-01567 (VAB), 2023 WL 4551377, at *9 (D. Conn. July 14, 2023) ("These dispute[s], in combination with the temporal proximity between Mr. Nzugang's FMLA leave request and his termination, when 'construe[d] . . . in the light most favorable to the non-moving party and draw all reasonable inferences in [his] favor,' are sufficient to preclude summary judgment on the prima facie case." (citations omitted)); *see also See Willford v. United Airlines, Inc.*, No. 18 Civ. 1060 (GBD), 2021 WL 4066502, at *4 (S.D.N.Y. Sept. 7, 2021) (finding the plaintiff raised an inference of discrimination under Title VII and the FMLA where the plaintiff's supervisor stated that if the plaintiff "wanted to take time off to be a mother, then this wasn't the job for [her] and [she] should quit" because the supervisor was involved in the investigation that led to the decision to terminate her); *Albertin v. Nathan Littauer Hosp. & Nursing Home*, 537 F. Supp. 3d 243, 269–70 (N.D.N.Y. 2021) (finding an inference of discrimination, despite a four-month gap between the FMLA request and the adverse employment decision and despite the plaintiff's preexisting "bad relationship" with her

supervisor, because the plaintiff's supervisor "asked whether plaintiff was using her FMLA leave to sabotage her vacation plans" and another supervisor "grew agitated" trying to "handle the resulting backlog of work"); *see also Wanamaker*, 11 F. Supp. 3d at 72 (stating that the evidence required to demonstrate a *prima facie* case "has been characterized as '*de minimis*'" (quoting *Hicks*, 593 F.3d at 166)).

Accordingly, Ms. Landolfi's FMLA retaliation claim will not be dismissed for failure to make out a *prima facie* case.

### 2. *The Issue of Pretext and the FMLA Retaliation Claim*

Once a *prima facie* case has been established, the issue turns to whether the Town of North Haven has demonstrated "a legitimate, non-discriminatory reason for its actions." *Graziadio*, 817 F.3d at 429. If the defendant demonstrates "a legitimate, non-discriminatory reason for its actions," the plaintiff "must then show that defendant's proffered explanation is pretextual." *Id*. "A plaintiff demonstrates pretext where [s]he shows that a retaliatory motive played a role in causing the adverse employment action." *Nzugang*, 2023 WL 4551377 at *9 (citing *Hicks*, 593 F.3d at 164).

Defendant argues that the Town of North Haven had legitimate, nonretaliatory reasons for her job elimination. "Specifically, the Plaintiff's job was eliminated in a reduction in force for financial reasons as well as her inability to develop and perform the HR Admin job despite numerous opportunities over a two-year period. Swinkoski believed that the Plaintiff was provided with sufficient time and opportunities to learn and acquired skills for the position, but that she failed to develop and perform the HR Admin job in a satisfactory manner. The Town of North Haven also required more police officers and firefighters and was in a situation due to

COVID where it was not viable to raise taxes. Several positions, which included the HR Admin position, were considered for potential elimination." Mem. at 21 (citations to record omitted).

Ms. Landolfi argues that the Town of North Haven's employees, and particularly her supervisor, Swinkoski, "harbored resentment toward Plaintiff based upon her having taken FMLA leave, particularly as her leave in 2019 was her second leave in the space of two years' time." Obj. at 19 ("Swinkoski made negative comments about Plaintiff's following her return from leave, telling a co-worker that 'he didn't want [Plaintiff] back at all,' and giving them the impression that 'he [was] upset because [Plaintiff] had taken time off from work because [she] got hurt . . .' Plaintiff's co-workers were likewise 'upset' with Plaintiff and made negative comments about her injuries and lave [sic] stating, 'You did this to yourself two years in a row.' These outwardly hostile comments were accompanied by a change in behavior toward Plaintiff following her FMLA leave. Plaintiff also began to have her job duties taken away from her and assigned to other co-workers, while at the same time Swinkoski did not speak with Plaintiff at all." (citations to record omitted)).

Ms. Landolfi also argues that sufficient evidence exists for a jury to find the Town of North Haven's proffered reason for her termination pretextual. Obj. at 20. She disputes the Town of North Haven's claim that it eliminated her position as part of a restructuring due to financial reasons, and argues that in reality, she was the only employee in the entire Town of North Haven who had her position eliminated in the 2020 calendar year. *Id.* (citations to record omitted). Ms. Landolfi also argues that the Town's claims that the focus of the reorganization was to free up money to spend elsewhere and the savings from cutting her position were "illusory." *Id.* ("Defendant did not save any money by terminating Plaintiff, because it spent whatever money was saved by eliminating Plaintiff's position by paying others to do Plaintiff's job.").

The Court agrees.

While the "FMLA is not a shield to protect employees from legitimate disciplinary action by their employers if their performance is lacking in some manner unrelated to their FMLA leave[,]" *Geromanos v. Columbia Univ.*, 322 F. Supp. 2d 420, 429 (S.D.N.Y. 2004) (citations omitted); *see also Hewett v. Triple Point Tech., Inc.*, 171 F. Supp. 3d 10, 19 (D. Conn. 2016) ("Hewett cannot use her potential need for FMLA leave as a 'shield' against a legitimate termination."), a plaintiff may prove pretext "by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." *Zann Kwan v. Andalex Grp*. LLC, 737 F.3d 834, 846 (2d Cir. 2013); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) ("Proof that the defendant's explanation is unworthy of credence is . . .  one form of circumstantial evidence that is probative of intentional discrimination . . . . [O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision."). This evidence must be more than Ms. Landolfi's opinion as to the satisfactory nature of her job performance. *See Mace v. Marcus Whitman Cent. Sch. Dist.*, No. 11-CV-6574-FPG, 2015 WL 5682665, at *11 (W.D.N.Y. Sept. 25, 2015), *aff'd*, 677 F. App'x 26 (2d Cir. 2017) ("an employer's proffered reason is that the employee's job performance was unsatisfactory, the employee's opinion to the contrary, by itself, is insufficient to raise a triable issue of fact as to pretext").

On this record, given the alleged comments of Ms. Landolfi's supervisor and other employees, there is evidence that, if believed by a jury, raises the possibility of pretext with respect to the Town of North Haven's rationale for her termination. *See*, *e.g*., Obj. at 19

("Swinkoski made negative comments about Plaintiff's following her return from leave, telling a co-worker that 'he didn't want [Plaintiff] back at all, . . . ."); Pl. SMF at 21 ("I know he's upset because you had taken time off from work because you got hurt."); *id.* ("Valerie Goodkin, another Defendant employee, approached Plaintiff and stated, 'You really ought to think about retiring. . . . You got hurt twice. Maybe this is a sign for you not to work.'"); *id.* at 21–22 (coworkers Tryanow and Wagner, who were later assigned Ms. Landolfi's job duties said to her "You did this to yourself two years in a row[.]").

Thus, on this record, there is a genuine issue of material fact as to whether Ms. Landolfi's use of FMLA leave resulted in her termination. *See Nzuang*, 2023 WL 4551377 at *14 (describing factual disputes, which "in combination with the timing issue discussed above, preclude summary judgment on pretext."); *see also Summa v. Hofstra Univ.*, 708 F.3d 115, 129–30 (2d Cir. 2013) (finding plaintiff made a sufficient showing of pretext to survive summary judgment where the record contained evidence supporting plaintiff's narrative and disproving factual elements of the defendant's legitimate rationale for its adverse action); *Treglia v. Town of Manlius*, 313 F.3d 713, 721–22 (2d Cir. 2002) (finding, on retaliation claims under the ADA and Rehabilitation Act, that the plaintiff made a sufficient showing on pretext to survive summary judgment where there were statements made by managers that indicated a retaliatory motive and the record contained evidence that could refute the defendant's legitimate reason for its adverse action).

Accordingly, Ms. Landolfi's FMLA retaliation claim will not be dismised for failure to provide evidence that the Town of North Haven's proffered reasons were pretextual.

**IV.     CONCLUSION**

For the foregoing reasons, the Town's motion for summary judgment is **GRANTED in part and DENIED in part.**

As to Ms. Landolfi's FMLA interference claim, any such claim arising out of her 2018 FMLA leave will be dismissed; her FMLA interference clam arising out of her 2019 FMLA leave will remain.

As to Ms. Landolfi's FMLA retaliation claim, any such claim arising out of her 2018 FMLA leave will be dismissed; her FMLA retaliation clam arising out of her 2019 FMLA leave will remain.

SO ORDERED at New Haven, Connecticut, this 23rd day of August, 2024.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

23